AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

FILED    LODGED
RECEIVED

OCT 27 2017

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Toshiba laptop computer, SN PSAGCU-06015 located at Washington State Patrol Evidence System High Tech Crimes Unit, 210 11th Ave. SW, Suite 402, Olympia, WA 98504

)
)
)
)
)
)

Case No. MJ17-5188

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, which is attached hereto and incorporated herein by this reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 245 | Violation of federally protected activities |
| 18 U.S.C. § 844(e) | Violation of interstate bomb threats |
| 18 U.S.C. § 875(c) | Violation of interstate communications |

The application is based on these facts:

See Affidavit of Patrick D. Dospoy

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

PATRICK D. DOSPOY, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____10/27/17_____

_____
*Judge's signature*

City and state: Tacoma, Washington

J. RICHARD CREATURA, U.S. Magistrate Judge
*Printed name and title*

USAO #_____

1

**AFFIDAVIT**

2  STATE OF WASHINGTON      )

3                          )      ss

4  COUNTY OF PIERCE         )

5       I, Patrick D. Dospoy, having been duly sworn, state as follows:

6  ### **Introduction And Agent Background**

7       1.      I make this affidavit in support of an application under Rule 41 of the

8  Federal Rules of Criminal Procedure for a search warrant authorizing the

9  examination of a digital device[1] or other electronic storage media,[2] hereinafter the

10  "**Subject Device**," which is currently in law enforcement possession, and the

11  extraction from those devices or electronic storage media of electronically stored

12  information described in Attachment B.

13       2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"),

14  and have been since March 2017.  Prior to the joining the FBI I obtained an

15  undergraduate degree in biological sciences at the University of Chicago, I then

16  obtained a doctorate in biomedical sciences from University of Texas Southwestern

17  Medical Center and thereafter worked with at GPG, a venture capital firm.  I

18  received approximately 21 weeks of training at the FBI Academy in Quantico,

19  Virginia where I was trained in legal processes and standards as well as investigative

20

21  ---

22  [1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.

23

24

25

26

27  [2] Electronic Storage media is any physical object upon which electronically stored information can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

28

AFFIDAVIT OF SPECIAL AGENT PATRICK D. DOSPOY
USAO#2017RO2507 (S.D. CA)
1 | P a g e

1    techniques. I was assigned to the Tacoma RA, Seattle Division, South Sound Child

2    Exploitation Task Force. I work child pornography, sex trafficking, sexual assault,

3    and parental kidnapping cases.

4         3.     The facts set forth in this Affidavit are based on my own personal

5    knowledge; knowledge obtained from other individuals during my participation in

6    this investigation, including other law enforcement officers; review of documents

7    and records related to this investigation; communications with others who have

8    personal knowledge of the events and circumstances described herein; and

9    information gained through my training and experience.

10        4.     Because this Affidavit is submitted for the limited purpose of

11   establishing probable cause in support of the application for a search warrant, it does

12   not set forth every fact that I, or others, have learned during the course of this

13   investigation.  I have set forth only the facts that I believe are necessary to establish

14   probable cause to believe that evidence and instrumentalities of violations of 18

15   U.S.C. §§ 245 (Interference with Federally Protected Rights), 844(e) (Interstate

16   Bomb Threats), and 875(c) (Interstate Threats), will be found on the **Subject Device**

17              **Identification Of The Subject Device To Be Examined**

18        5.     The **Subject Device** is a Toshiba laptop computer, Model Number

19   PSAGCU-0601S, Serial Number 98669877Q ("Target Computer"), as more fully

20   described in Attachment A.

21        6.     The **Subject Device** is contained in a black computer bag with a mouse

22   and power cord, and is currently located at the Washington State Patrol Evidence

23   System High Tech Crimes Unit, 210 11th Avenue SW, Suite 402, Olympia,

24   Washington 98504.

25        7.     In my training and experience, I know that the **Subject Device** has been

26   stored in a manner in which its contents are, to the extent material to this

27   investigation, in substantially the same state as they were when the **Subject Device**

28   first came into the possession of the WSP.

AFFIDAVIT OF SPECIAL AGENT PATRICK D. DOSPOY
USAO#2017RO2507 (S.D. CA)
**2** | P a g e

8. The warrant would authorize the forensic examination of the **Subject Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

### The Investigation of Ronald Nelson

9. The FBI initiated an investigation into Ronald Nelson based on its belief that he had sent Kevin Beiser is a Board Member of the San Diego Unified School District, in the Southern District of California a threatening message.

10. In 2017, Mr. Beiser voted to support lesson plans to teach an overview of various religions, including Islam, at San Diego public schools.

11. On approximately April 27, 2017, a person identified as "Ronald Sandberg" posted a series of messages on Mr. Beiser's Facebook page. The first message was as follows:

> *Just tried calling you at home Kevin, guess you were not home. Looking forward to "getting in touch" soon. I promise you that we will cross paths soon.* [smiley face emoji]

12. The second message, posted shortly thereafter, was as follows:

> *In case anybody is interested in that lead board member of the San Diego school district that wants our kids to to [sic] succumb to Sharia Law and do Islamic prayers in class, his name is Kevin Richard Beiser. He lives at* [address omitted]. *His landline telephone number is* [telephone number omitted]. *Have at him boys.* [smiley face emoji]

The second posted message included Beiser's correct home address, but incorrect home telephone number.

13. In a third message, the poster wrote, "*No worries if none of you have the chance to meet Kevin, I sure will soon.* [smiley face emoji]."

14. In the fourth message, the poster wrote, "*Wonders now if Kevin wishes he had never left Bremerton lol (Laugh Out Loud)* [smiley face emoji]." Mr. Beiser had previously lived in Bremerton, Washington.

15.     Finally, the poster wrote, "*By the way, Kevin, just in case you think this is a joke . . . you can run, but you can't hide. We will find you eventually. You had better be looking over your shoulder from now on, we are right behind you.*"

16.     On May 4, 2017, San Diego Police Department ("SDPD") officers interviewed Mr. Beiser at his home. Mr. Beiser was very upset and fearful. He explained he was very afraid that anyone could show up at his home with the intent to harm him or his husband because his home address was posted on Facebook. FBI Agents interviewed Mr. Beiser on July 24, 2017, at which time he reiterated the same ongoing fear.

17.     Upon conducting a check of publicly-available information, an SDPD officer reviewed the Facebook page of "Ronald Sandberg." The Facebook page reflected that "Sandberg" lived in Anacortes, Washington. Upon conducting a search of criminal history of "Sandburg," the officer noted that he shared the same birthdate as Nelson.

18.     A review of "Sandberg's" Facebook page indicates it is located at www.facebook.com/ronald.nelson.980.

19.     A review of Ronald Nelson's Washington State driver's license revealed that he, like "Sandberg," lives in Anacortes, Washington, and his photograph resembled the profile picture on "Sandberg's" Facebook page.

20.     Anacortes and Bremerton, Washington are both located on islands near Seattle, Washington. Bremerton is west of Seattle, and Anacortes is approximately 91.6 miles north of Bremerton.

21.     On October 3, 2017, United States Magistrate Judge Nita L. Stormes, Southern District of California, issued a search warrant (17MJ3668) for the Facebook account of Ronald Nelson (aka Ronald Sandberg), based on the above.

22.     On October 3, 2017, after obtaining a search warrant for Nelson's Facebook account, FBI agents learned that Nelson's Computer (the **Subject Device**) was in the possession of the Washington State Patrol (hereafter WSP).

A.   **Skagit County Case**

23.   Subsequent investigation revealed that on June 6, 2017, the Office of the Governor of Washington contacted the WSP Criminal Investigation Unit regarding a threatening email received through the Governor's web email (i.e. email submitted to the Governor through his website). The email provided the following:

> *Governor, I am giving you one week to solve the crises that is happening at Evergreen State College in Olympia. If you decide to not take care of it, I will be forced to use the powers that be in my group to come after you personally and also the college there. Trust me governor, you don't want to say no to this. Your very life depends on it. Do the right thing and stop the nonsense at Evergreen, or else I am personally going to come and find you, I am an ex-Marine. Trust me gov, you DON'T want me to catch up with you. You have my full name and address here so take this to heart, you fuck up on this, I will come after you.*

Also included in the email was Nelson's name, address, and telephone number. The email originated from Ronald.Nelson@msn.com ("Nelson's email address").

24.   WSP officers reviewed the email and identified Nelson's address as XXXXX Avenue, Anacortes, Washington ("Nelson's residence address").  Using publicly-available information, officers searched Facebook using Nelson's email address, and located the Facebook page with the vanity name "Ronald Sandberg."

25.   The Washington Governor's Office provided WSP officers with information of the email sent from Nelson's email address, including the Internet Protocol ("IP") number from which it originated. Using an open source website that identifies the origin of IP addresses, WSP officers learned the IP address was provided by Frontier Communications, located in Skagit County, Washington. Anacortes is located in Skagit County. Officers subsequently obtained a Washington State search warrant for the IP address and learned it was issued to Nelson's residence address.

26.   At approximately 8:30 p.m., June 6, 2017, WSP officers responded to Nelson's residence. Nelson's wife answered the door and explained Nelson was in

the shower. Officers were granted permission to go inside to wait for Nelson. Officers stood at the door and declined the invitation to enter further. Mrs. Nelson explained they share the residence with Nelson's brother, his wife, and their son.

27.    After a few minutes, Nelson came to the door of his residence where officers were waiting. When told officers were there to discuss his recent communication with the Governor's Office, Nelson's left cheek made a distinct twitch and Nelson looked down and away, appearing very nervous.

28.    Nelson initially told officers he was drunk the night before and did not remember what he had done. Officers asked if he would voluntarily accompany them for an interview. Nelson consented and asked if he could first change his clothing.

29.    While waiting for Nelson to change clothes, officers observed the **Subject Device** on the dining room table.  Mrs. Nelson stated it belonged to Nelson, which Nelson subsequently confirmed.  Officers asked Nelson for permission to take the **Subject Device** with him to the interview, and Nelson agreed.

30.    At the Anacortes Police Department, officers advised Nelson of his *Miranda* rights.  Nelson confirmed that he understood his rights and consented to an audio-recorded interview.

31.    When asked about the email to the Governor's Office, Nelson said, "well, I know one thing I need to do is stop drinking so much." Although he initially claimed he did not recall the communication, Nelson said "I'm not saying I didn't . . . I think it is possible . . . it had to be me."  Nelson also confirmed he did not think it was possible for anyone else in his household to contact the Governor's Office from his computer.  Finally, Nelson admitted the email came from him, that he was online the night before, and recalled some of his communication with the Governor's Office.

32.    Nelson admitted he was angry the night before because he believed a professor at Evergreen State College was being treated unfairly for allegedly losing his job after refusing to leave campus on "no whites day."

33.    When asked how he would interpret his email, Nelson said, "the ramblings of a madman," and that it was "obviously" a threatening statement.

34.    Nelson also informed officers that he had previously been interviewed by Secret Service Agents in 2011, after he sent a message to President Obama that "I'd like to get him in my sights."

35.    Nelson explained that, although he had rebuilt the **Subject Device** several months ago, he did not manually erase his computer's browser history, and does not erase cookies.  When told that officers would apply for a warrant to search the **Subject Device**, and asked if there was anything in addition to that pertaining to the immediate investigation, Nelson said, "No, you're free to -- free to do that if you like, so I don't – I don't have anything to hide."

36.    As a result of their investigation, Nelson was charged in Skagit County District and Municipal Court with misdemeanor Harassment in violation of Revised Code of Washington, 9A.46.020.

37.    On June 20, 2017, WSP officers obtained a search warrant to search the **Subject Device.**  They obtained information from the **Subject Device** but did not review it because Nelson's pled guilty on August 7, 2017.  The Skagit County District and Municipal Court sentenced Nelson to 364 days of jail (with 350 days suspended), followed by 24 months of probation, and a fine of $5,000.

38.    The **Subject Device** remains in the custody of the WSP, but they intend to return it to Nelson soon due to the termination of State criminal proceedings.

39.    Despite his conviction in Skagit County District Court and Municipal Court, Nelson remains the target of an investigation in the Southern District of California for the crimes outlined in Attachment B.

## **Technical Terms**

40.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses.

b.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

41.     Based on my training, experience, and research, I know that the **Subject Device** has capabilities that allow it to serve as a computer to communicate with others via the Internet, and to store such communications. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## **Computers, Electronic Storage, And Forensic Analysis**

42.     Based on my knowledge, training, and experience, I know that digital devices and electronic storage media can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device used to access the internet. This information can sometimes be recovered with forensic tools.

1    43.    There is probable cause to believe that things that were once stored on

2  some of the **Subject Device** may still be stored there, for at least the following

3  reasons:

4         a.    Based on my knowledge, training, and experience, I know that
5  computer files or remnants of such files can be recovered months or even years after
   they have been downloaded onto a storage medium, deleted, or viewed via the
6  Internet. Electronic files downloaded to a storage medium can be stored for years at
7  little or no cost. Even when files have been deleted, they can be recovered months or
   years later using forensic tools. This is so because when a person "deletes" a file on
8  a computer, the data contained in the file does not actually disappear; rather, that
9  data remains on the storage medium until it is overwritten by new data.

10        b.    Therefore, deleted files, or remnants of deleted files, may reside
   in free space or slack space – that is, in space on the storage medium that is not
11 currently being used by an active file – for long periods of time before they are
   overwritten. In addition, a computer's operating system may also keep a record of
12 deleted data in a "swap" or "recovery" file.

13        c.    Wholly apart from user-generated files, computer storage media
14 – in particular, computers' internal hard drives – contain electronic evidence of how
   a computer has been used, what it has been used for, and who has used it. To give a
15 few examples, this forensic evidence can take the form of operating system
16 configurations, artifacts from operating system or application operation, file system
   data structures, and virtual memory "swap" or paging files. Computer users typically
17 do not erase or delete this evidence, because special software is typically required
18 for that task. However, it is technically possible to delete this information.

19        d.    Similarly, files that have been viewed via the internet are
20 sometimes automatically downloaded into a temporary Internet directory or "cache."

21    44.    *Forensic evidence.* As further described in Attachment B, this

22 application seeks permission to locate not only electronically stored information that

23 might serve as direct evidence of the crimes described on the warrant, but also

24 forensic evidence that establishes how the **Subject Device** were used, the purpose of

25 their use, who used them, and when. There is probable cause to believe that this

26 forensic electronic evidence might be on the **Subject Device** because:

27        a.    Data on the storage medium can provide evidence of a file that
28 was once on the storage medium but has since been deleted or edited, or of a deleted

portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the data files that were created and the sequence in which they were created.

        b.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a digital device such as a cell phone (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the device was remotely accessed, thus inculpating or exculpating the device owner and/or others with direct physical access to the device. Further, computer and storage media activity can indicate how and when the device was accessed or used. For example, as described herein, typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). Last, information stored within a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation. For example, information within the device may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

45.     *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Digital Devices As Instrumentalities Of The Crime

46.     As described above Nelson has actively used his online accounts to make threats against others.

47.     Based on my training and experience, and through consultations with other law enforcement agents experienced in the investigation of hate crimes and interstate threat offenses, I know that evidence of motivation of persons involved in hate crimes and interstate threat offenses can assist in the identification of the subject, co-conspirators, and victims. I know that one study identifies four broad categories of hate crime offenders and their typical motivations; 1) thrill offenders – who commit their crimes for the excitement or the thrill; 2) defensive offenders – who view themselves as defending their "turf"; 3) mission offenders – who believe their life's mission is to rid the world of groups they consider evil or inferior; and, 4)

1    retaliatory offenders – who engage in retaliatory violence in the belief that by doing

2    so, just desserts is served.[3]

3        48.    Based on my training and experience, and through consultations with

4    other law enforcement agents in the investigation of hate crimes and interstate threat

5    offenses, I know that persons involved in hate crimes and interstate threat offenses

6    use computers for the following reasons:

7              a.    to collect, produce, and store (for at least one year) word

8    processing documents, records, messages (including electronic mail ("email") and

9    text messages), images, or data, that tend to show motivation and beliefs that give

10   rise to hate crime offenses or threatening behavior and statements;

11             b.    to communicate with others (including both targets and persons

12   with whom they share beliefs and opinions) via messages, online group chats, social

13   media, websites (including news comment sections), that tend to show motivation

14   and beliefs that give rise to hate crime offenses, or threatening behavior and

15   statements;

16             c.    to visit internet websites of persons or groups that they believe

17   share their motivation and beliefs that give rise to hate crime offenses, or threatening

18   behavior and statements; and,

19             d.    to visit internet websites of persons or groups who are targets of

20   their motivation and beliefs that give rise to hate crime offenses, or threatening

21   behavior and statements.

22   **Search Techniques**

23       49.    Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the

24   Federal Rules of Criminal Procedure, the warrant I am applying for will permit

25   imaging or otherwise copying all data contained on the **Subject Device**, and will

26

27   ---

[3]   McDevitt, J., Levin, J. and Bennett, S. (2002). "Hate Crime offenders: an expanded

28   typology," Journal of Social Issues 58/2:303-17.

1   specifically authorize a review of the media or information consistent with the

2   warrant.

3         50.     In accordance with the information in this affidavit, law enforcement

4   personnel will execute the search of the **Subject Device** pursuant to this warrant as

5   follows:

6         **a.**       **Securing the Data**

7

8               i.       In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the Subject

9   Device[4]

10               ii.       Law enforcement will only create an image of data physically present on or within the **Subject Device**  Creating an image of the

11   **Subject Device** will not result in access to any data physically located elsewhere. However, **Subject Device** that have previously connected to devices at other

12   locations may contain data from those other locations.

13         **b.**       **Searching the Forensic Images**

14

15               i.       Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques.  In some cases, it is

16   possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated

17   materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant, and law

18   enforcement may need to conduct more extensive searches to locate evidence that

19   falls within the scope of the warrant.  The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected

20   to find, identify, segregate and/or duplicate the items authorized to be seized

21   pursuant to Attachment B to this affidavit.

22

---

23   [4] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to

24   follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer

25   forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have

26   technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may

27   possess on any given case. Therefore, it is often important that computer forensic examiners and

28   investigative personnel work closely together.

ii.    Agents may utilize hash values to exclude certain known files, such as the operating system and other routine software, from the search results. However, because the evidence I am seeking does not have particular known hash values, agents will not be able to use any type of hash value library to locate the items in Attachment B.

## Request For Sealing

51.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## Conclusion

52.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in Attachment A to seek the items described in Attachment B.

_____

PATRICK D. DOSPOY
Special Agent, FBI

Subscribed and sworn to before me this __27th__ day of October, 2017.

_____

J. RICHARD CREATURA
United States Magistrate Judge

## ATTACHMENT A

The **Subject Device** is a Toshiba laptop computer, Model Number PSAGCU-0601S, Serial Number 98669877Q ("Target Computer"). The **Subject Device** is contained in a black computer bag with a mouse and power cord, and is currently located at the Washington State Patrol Evidence System High Tech Crimes Unit, 210 11th Avenue SW, Suite 402, Olympia, Washington 98504.

This warrant authorizes the forensic examination of the **Subject Device** for the purpose of identifying the electronically stored information described in Attachment B.

As soon as practicable, but in any event no later than within 60 days of seizure (absent further order of the issuing judicial officer), the government must provide the issuing judicial officer with a return containing a sworn certificate that:

(a)     certifies precisely what ESI it has obtained;

(b)     certifies what ESI it has returned;

(c)     certifies it has returned the actual device(s) seized; and

(d)     certifies it has destroyed any copy made of the ESI that is outside the scope of the warrant.

1

## Attachment B

2        All records on the **Subject Device** described in Attachment A that relate to

3  violations of 18 U.S.C. §§ 245, 844(e), and/or 875(c) and involve Ronald Nelson

4  since April 27, 2016 (approximately one year prior to the alleged offense(s)),

5  including:

6        1.      word processing documents, records, messages (including electronic

7  mail ("email") and text messages), images, or data on "digital devices" (defined

8  below):

9                a.      collected, produced, or stored, that tend to show motivation and

10  beliefs that give rise to hate crime offenses or threatening behavior and statements;

11                b.      indicating communications with others via messages, online

12  group chats, social media, websites, that tend to show motivation and beliefs that

13  give rise to hate crime offenses, or threatening behavior and statements;

14                c.      indicating visits to Internet websites of persons or groups that

15  they believe share their motivation and beliefs that give rise to hate crime offenses,

16  or threatening behavior and statements;

17                d.      indicating visits to Internet websites of persons or groups who are

18  targets of their motivation and beliefs that give rise to hate crime offenses, or

19  threatening behavior and statements;

20                e.      identifying or tending to identify other participants in the crimes

21  above;

22                f.      tending to place in context, identify the creator or recipient of, or

23  establish the time of creation or receipt of electronic information in (a)-(d) above.

24        2.      Evidence of user attribution showing who used or owned the **Subject**

25  **Device** at the time the things described in this warrant were created, edited, or

26  deleted, such as logs, phonebooks, saved usernames and passwords, documents, and

27  browsing history;

28

1       As used above, the terms "records" and "information" include all of the
2   foregoing items of evidence in whatever form and by whatever means they may have
3   been created or stored, including any form of computer or electronic storage (such as
4   flash memory or other media that can store data) and any photographic form.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28